597 A.2d 211

**Audrey J. LYNN, Personal Representative for William W. Lynn, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 12, 1991.

Decided Aug. 29, 1991.

Lawrence M. Cherba, for petitioner.

James K. Bradley, Assistant Counsel, for respondent.

Before DOYLE and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

This is an appeal by Audrey J. Lynn, the personal representative for William W. Lynn (Claimant), from an order of the Unemployment Compensation Board of Review (Board) affirming the referee's decision which denied Claimant unemployment compensation benefits.

On April 1, 1987 Claimant was appointed Chief of Police of the Borough of New Britain (Borough), Bucks County, Commonwealth of Pennsylvania. Although there were part-time police officers, Claimant was the only full-time

police officer employed by the Borough. As Chief of Police, he was responsible for supervising the Borough Police Department as well as for duties as a police officer. Part of Claimant's administrative duties were setting work schedules for the part-time police officers and assisting the Mayor and Borough Council in the hiring of part-time police officers.

On May 3, 1989, for reasons not relevant to this appeal, Claimant was dismissed from his position at the final rate of $25,000.00 per year. Claimant filed an application for unemployment compensation benefits on June 24, 1990, thereby establishing a base year period of January 1, 1989 to December 31, 1989. The Office of Employment Security denied the application on the basis of financial ineligibility, and Claimant appealed.

After a hearing on November 15, 1990, the referee determined that Claimant was financially ineligible for benefits because he held a major non-tenured policymaking or advisory position which is excluded from unemployment compensation coverage pursuant to Section 1201(b)(9) of the Pennsylvania Unemployment Compensation Law (Law).[1] Claimant appealed the referee's decision to the Board. By order

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by the Act of September 27, 1971, P.L. 486, 43 P.S. § 911(b)(9). Section 1201 provides in pertinent part:

> (a) Service performed after December 31, 1977, in the employ of any of the instrumentalities or any political subdivision of this Commonwealth of any of its instrumentalities or any instrumentality of more than one of the foregoing or any instrumentality which is jointly owned by this Commonwealth or a political subdivision thereof and one or more other states or political subdivisions of this or other states provided that such service is excluded from "employment" as defined in the Federal Unemployment Tax Act by section 3306(c)(7) of that act and is not excluded from "employment" under section 4(1)(4) of this act, shall be deemed to constitute employment subject to this act with the exceptions hereinafter set forth in section 1201(b).

> .     .     .     .     .

> (b)(9) Individuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as (i) *a major nontenured policymaking or advisory position*, or (ii) a policymaking position the performance of the duties of which ordinarily does not require more than eight hours per week. (Emphasis added).

dated January 14, 1991, the Board affirmed the referee's decision. Claimant's appeal to this Court followed.

Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Placek v. Unemployment Compensation Board of Review*, 116 Pa.Commonwealth Ct. 475, 477, 542 A.2d 196, 197 (1988).

Claimant contends that the Board erred in affirming the referee's determination that Claimant held a major non-tenured policymaking or advisory position, thus excluding him from unemployment compensation coverage. This Court has interpreted language similar to that in Section 1201(b)(9) when it examined Section 1002(11) of the Law which applies to Commonwealth employees in *Gahres v. Unemployment Compensation Board of Review*, 61 Pa.Commonwealth Ct. 114, 433 A.2d 152 (1981). In *Gahres*, we noted that:

> the terms of Section 1002(11) do not apply the exclusion to positions which are policymaking or advisory positions merely as a matter of fact. The law applies the exclusion to those which are so "designated" and describes the designation as being "under or pursuant to the laws of this Commonwealth." We must construe the statute to give effect to all of its wording, and, when the words are clear, we cannot disregard the literal language. 1 Pa.C.S. § 1921(a), (b). Of course, not even the claimant argues that the exclusion requires the existence of a provision of law which uses the precise words, "major" or "policymaking" or "advisory." However, *there must be some official designation of the position as advisory (if not policymaking) under or pursuant to law—that is, by the words of a statute, regulation, executive order or the like.*
>
> The logic of such a requirement is plain. *The exclusion imposes ineligibility on the basis that any occupant of such a position can anticipate the possibility of job termination upon a change of administration, so*

*that unemployment in such circumstances cannot be regarded as sudden and unexpected.* The required official designation hence provides a basis for that expectation; when the nature of the position is designated by law, there is thus an official signpost which informs the jobholder, upon assuming the position, of what can be expected. Moreover, discrimination against the individual is avoided if ineligibility rests upon the official designation of the position, rather than upon the specific activities or personal performance of a particular incumbent. (Emphases added).

*Id.,* 61 Pa.Commonwealth Ct. at 116, 433 A.2d at 153–54. Such an analysis is equally applicable here, and we must determine, therefore, whether any statute, regulation or other official designation exists describing the Chief of Police of the Borough of New Britain as holding a major non-tenured policymaking or advisory position. *See City of Philadelphia v. Unemployment Compensation Board of Review,* 68 Pa.Commonwealth Ct. 147, 151, 448 A.2d 687, 689 (1982).

In the present appeal, the record does not refer to any statute, regulation or other official designation which provides a description of the Chief of Police as holding a major non-tenured policymaking or advisory position. Although Section 1121 of The Borough Code (Code), Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46121 provides a general description of the role of the position of police chief, the Code is silent as to whether the position of police chief is a "major non-tenured policymaking or advisory position." No regulations or provisions from the Borough's ordinance have been included in the record. The only "official designation" contained in the record is a letter dated July 10, 1990 from the Department of Labor and Industry requesting from the Borough information relating to Claimant's former employment, in which the Borough indicated that Claimant's former position was designated as a major non-tenured policymaking or advisory position.

Claimant's testimony relating to his job duties, however, does not suggest that he held a major non-tenured policymaking or advisory position:

Referee: And in your job, I mean, do you have the decision ... do you make the decisions with regard to the Police Department? Were you in charge of the decision making of the Police Department? That's ... I'm just ... I'll read it to you. It says, "decisions required to operate the Police Department." That ... that was your decision. They're your comments, go ahead.

Claimant: I don't know how to....

R: I mean did you oversee the operations of the Police, I guess that's what they're saying? Did you over see [sic] the operations....

C: As much as possible.

R: Well, let me go on further. What ... to what degree were the responsibilities of the position constrained by regulations or Law? 90%. What proportion of the Claimant's overall responsibility involved advising his or her Supervisors? They have 10%.

C: I imagine the reason they stated 10% was due to the fact that once every month the Police Committee would have a meeting with me. As to what transpired and what I had in mind for the Police Department, what they expected.

R: Do you make the assignments? Was that your job to make assignments? Rosters things like that?

C: Schedule.

R: Schedule?

C: Which was....

R: Go ahead.

C: The schedule was always flexible.

R: But you designated or you set the schedule?

C: Yes.

R: For the Police Officers?

C: Yes.

R: How about hiring, things like that? Did you do that?

C: That was a joint of concern [sic] with the Police Committee and myself. We would all interview the per-

son to be hired or the applicant. And they made up their decision.

R: Well, who had ... you didn't have a decision, they did ... both of you?

C: Well, I ... I would put my recommendation in yea or nay. And it ... the final decision was theirs.

R.R. 31a—32a.

■ The record establishes that although Claimant played a significant role in the policymaking process by advising the members of the Police Committee, making recommendations and giving input, it was the Police Committee that had the final say in setting policy and decision-making which pertained to the police department. Claimant, therefore, cannot be considered as having held a "major policymaking or advisory position."

Claimant also contends that the Board erred in finding that he was "non-tenured" within the meaning of the Law because he held a tenured position within the meaning of the Police Tenure Act (Act), Act of June 15, 1951, P.L. 586, §§ 1–5, *as amended,* 53 P.S. §§ 811–815. The Act applies to boroughs such as New Britain,[2] which have a police force of less than three full-time officers and which are not subject to the civil service provisions of the Code, at Sections 1171–1195, 53 P.S. §§ 46171–46195. Section 1 of the Act, 53 P.S. § 811. The Act provides that regular full-time police officers cannot be suspended, removed or reduced in rank except for certain enumerated reasons. Section 2 of the Act, 53 P.S. § 812. Such actions require a filing of written charges and a hearing in order to satisfy the police officer's due process rights. *Nuss v. Falls Township,* 89 Pa.Commonwealth Ct. 97, 491 A.2d 971 (1985). The provisions of the Act apply to chiefs of police as well as to rank-

**2.** The Board argues that the Act does not apply to the present appeal because the record "will not support a finding that the Borough of New Britain is a second class township or that it has a police force of less than three members." Respondent's Brief at 10. This argument lacks merit. The Act does apply because New Britain is a borough and not a township of any class and because Claimant was the only one full-time police officer employed by the Borough.

and-file police officers. *Albrechta v. Borough of Shick-shinny*, 129 Pa.Commonwealth Ct. 206, 565 A.2d 198 (1989), *appeal denied*, 525 Pa. 620, 577 A.2d 891 (1990).

■ Because Claimant was employed by a borough covered by the Police Tenure Act, he had the status of a tenured police officer. As such, he cannot be considered to have held a "major non-tenured policymaking or advisory position" within the meaning of the Unemployment Compensation Law. Accordingly, we reverse the Board's determination to deny Claimant unemployment compensation benefits.

The order of the Board is reversed.

## ORDER

AND NOW, this 29th day of August, 1991, the order of the Unemployment Compensation Board of Review dated January 14, 1991, is hereby reversed.